Johnson, C. J. This case was brought into this court by a writ of error to reverse the judgment of the Circuit Court overruling the plaintiffs’ motion for a new trial. The defendants in error instituted an action of ejectment in the court below, and relied for their recovery alone upon a patent certificate, which purported to have been issued to their father. This certificate, it is true, according to the statement of the clerk, is not now on file in his office, yet as the plaintiff has failed to incorporate it into his bill of exceptions, he will not be permitted here to take any advantage of its absence; but this court will indulge the presumption that the certificate introduced to the jury was in due form of law. It is enacted by the first and second sections of chapter 53 of the Revised Code that the action of ejectment may be maintained in all cases where the plaintiff is legally entitled to the possession of the premises, and also that the action of ejectment may be maintained in all cases where the plaintiff claims the possession of the premises under or by virtue of an entry made with the register and receiver of the proper Land Office of the United States. It is clear, therefore, that under this statute the party to whom a patent certificate has been-regularly issued, can maintain ejectment for the- premises, and it is equally certain that since the passage of the act of Congress of May 20th, A. D. 1836, the heirs of such party may maintain such action upon a certificate issued to the ancestor in his life-time. The act of Congress referred to, declares, that in all cases where patents for public lands have been or may hereafter be issued, in pursuance of any law of the United States to a person who had died, or shall hereafter die before the date of such patent, the title to the land designated therein shall enure to, and become vested in, the heirs, devisees, or assignees, of such deceased patentee, as if the patent had issued to the deceased person during life. It is contended however that the question presented here is not, whether the party making the entry, or his heirs, or legal representatives, can maintain the suit; but whether an entry made in the name of the ancestor, after his death, enures to the benefit of the heir, so as to enable him to maintain the action. Since the adoption of the Revised Code, a patent certificate, as an instrument of evidence, in support of the action of ejectment, is of equal grade and dignity with a patent itself. It is not at all material for the purpose of this case whether a patent certificate confers a legal or equitable interest in tbe land, as it is expressly declared to be sufficient to support the action. Under the law as it stands upon the statute book, the whole enquiry is narrowed down to a single point, and that is whether the certificate read to the jury in the couit below, under all the circumstances surrounding it, can be considered as being entitled to the full force and operation of a patent certificate. The fact as shown by the testimony, is that the land was entered with the money of Claibom Wicker, the father of the defendants, and under whom they claim, sometime after his death,' but at his special request whilst alive. Elijah Baker, a witness, testified drat on the night previous to his death, Claibom Wicker requested him to enter the land with his money, and that some five or six weeks after his death, he went to the Land Office at Fayetteville, and entered the land with the money of which the said Claibom Wicker died possessed. It appears from the proof that Baker was constituted the agent of Claibom Wicker, the ancestor of the defendants, to malee the entry of the land, and that the money was expressly appropriated for that purpose by him in his life-time. It will be conceded as a general principle, that all agencies cease at the death of the principal, but in case the agent should go on and execute his trust, even after the death of his principal, we apprehend his acts would not be absolutely void, but they would still be capable of ratification by. those who might be in a situation to claim the benefit of them. We do not consider ourselves called upon in the present attitude of this case to decide whether the heirs would be legally bound by the acts of the agent or not. The true and only question involved is, whether they are not at liberty to ratify and confirm the act of their father’s agent, and whether it lies in the mouth of a mere stranger to question the authority, under which that agent acted. We consider the proposition clear and uncontrovertible that though the act of the agent may have been wholly unauthorized, and that as such it might by possibility have been entirely repudiated by the heirs, yet as they stand in the place of their ancestor, they most assuredly have the power to ratify and confirm it. There can be no doubt but that where a party constitutes another his agent to do a particular thing, although he may depart from his authority, or even perform the act after his power had expired, or been revoked, he could still adopt it, and make it his own. If the principal could ratify the acts of his agent under such circumstances, it would be diffi j cult to imagine any good or substantial reason why those who occupy his place could not do the same thing. The defence set up in the court below, if good to defeat the patent certificate, would be equally ao as to the patent itself. It is not that it confers merely an equitable title and that therefore it is insufficient to support the action, but it is placed upon the broad ground that the purchase is absolutely void, and that the heirs can acquire no title under it, either in law or equity. It becomes necessary here to look into this doctrine, and to see what would necessarily result from its adoption. The contract, so far as the heirs of Claiborn Wicker are concerned, is executed, by the payment of the whole consideration and that too out of the moneys of the estate, and whether the legal title has passed out of the General Government or not, cannot in the least affect the present question, because, if the objection taken be good to defeat the certificate, we think that it would most assuredly have a like effect upon the patent itself. If this position be correct and the doctrine, contended for by the plaintiff in error be sound, it is utterly impossible to escape the conclusion that the estate, upon the supposition that a patent had actually issued, would escheat to the State Government. The title having in due form of law passed out of the General Government and not having vested either in the ancestor, nor the heir, this result would inevitably follow. We cannot for one moment believe that such a construction of the contract, would be warranted by the principles of law governing such cases. We entertain no doubt but that the heirs of Claibqm Wicker have a clear equitable title under and by virtue of the patent certificate; and if so the question is at an end. The heirs by instituting this suit, have fully ratified and confirmed the act of their ancestor’s agent in making the purchase, and they having given it their sanction, it most assuredly does not lie in the mouth of a stranger to question its regularity or validity. But the plaintiff in error alleges that he intermarried with the widow of Claiborn Wicker and that therefore he has equal right to the possession with the heii# themselves. It appears from the evidence in the cause that the widow of Claiborn Wicker departed this life in December, 1844, which was before the institution of this suit, and consequently McClairen js left wholly without a pretext for withholding the possession from the heirs. The first point made in the court below by the plaintiff in error was that the defendants should not be permitted to prove that the land in controversy was entered at the instance and special request of Claiborn Wicker, and also that the entry was made with his money set apart and. appropriated for that purpose before his death. The court correctly ruled that such evidence was competent and therefore permitted it to go to the jury. After the plaintiff had established the fact, that the certificate bore date subsequently to the death of Claiborn Wicker, there can be no question of the right of the defendants to introduce proof to show the facts and circumstances under which the entry was really made. It follows from the principles here asserted, that the Circuit Court committed no error in giving all the instructions asked for by the defendants in error. The first instruction asked for by the plaintiff in error, was that “if thejr (the jury) believe that Claiborn Wicker, the father of the plaintiffs, and under whom they claim, departed this life previous to said entry in the Land Office, they should find for tire defendant.” This the court properly refused. The second is, that if the lands were purchased with money that belonged to Claiborn Wicker in his life-time, after his death, the heirs have only an equitable title. The principle asserted -by this instruction must be conceded to be correct in the abstract, and would hold equally whether the entry had been made previous, or subsequent to tire death. The patent certificate, though it should have regularly issued to the ancestor in his life-time, would only have conferred an equitable estate in the land, and it having issued after-wards, could not have raised it to a higher grade. But this instruction was purely abstract, as the law under which the action was prosecuted, did not require a legal title to support that action. The question was not what grade of title the defendants derived from the cer - tificate, but simply whether the paper offered was entitled to the force and effect of a patent certificate. There is no error therefore in refusihf that instruction. The third and last instruction asked by the plaintiff in error, is that “if the jury believe that the land was purchased rvith the moneys, which were of Claiborn Wicker at tire time of his death, and McClairen, the defendant, intermarried with his widow, he, McClairen, has equal title both in law and equity rvith the plaintiffs.” This is also a mere abstract proposition, as it is not sufficiently broad to cover the proof. It was in evidence that the widow departed this life before the institution of the suit, and in order to have made this instruction applicable to tbe state of case, that fact should have been noticed and the instruction based upon it. This instruction was also correctly refused. We are therefore clearly of opinion that the motion for a new trial was properly overruled. Judgment affirmed.